# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| **LEROY SMITH**, <br> Petitioner, <br> vs. <br> **JAMES YATES**, <br> Respondent. | CASE NO. 07cv0303-RTB(NLS) <br><br> **ORDER DENYING 28 U.S.C. § 2254 HABEAS PETITION** |

Proceeding pro se and in forma pauperis, Leroy Smith ("Smith"), a state prisoner serving an indeterminate life sentence with the possibility of parole for a 1975 first-degree murder conviction, seeks a 28 U.S.C. § 2254 writ of habeas corpus. He does not challenge the fact or duration of his conviction or sentence in this Petition, but rather the conduct and result of disciplinary hearings associated with a Rules Violation Report ("RVR") charging him with possession of inmate-manufactured alcohol. Respondent filed an Answer (Dkt. No. 7), and Smith filed a Traverse (Dkt. No. 8). By Order entered November 25, 2008, this matter was reassigned to the Honorable Roger T. Benitez, United States District Court Judge for the Southern District of California. (Dkt. No. 9.) For the reasons discussed below, the Petition is **<u>DENIED</u>**.

//

**BACKGROUND**

In challenging the disciplinary report, Smith contended he was unaware of the presence of about one gallon of "pruno" found in a 5-gallon bucket wrapped inside a plastic bag under the lower bunk occupied by Smith's cellmate, and therefore was not guilty of the alcohol possession rules infraction with which he was charged in the January 14, 2005 RVR. His cellmate testified the alcohol was his alone, not Smith's. Nevertheless, Smith was found guilty of the violation at hearings through a third-level institutional appeal decided in April 2006. He was assessed a forfeiture of 120 days of good time credit for the division "C(II)" offense. (Pet. pp. 5-6; Pet. Exh. D; Ans. Exh. 2.)

Smith then filed a petition for a writ of habeas corpus in Fresno County Superior Court, Case No. 06crwr678094. (Ans. Exh. 3.) He contended: the disciplinary decision lacked evidentiary support in violation of his Fourteenth Amendment due process rights; his federal constitutional rights were violated by denial of his request to present certain witnesses; his equal protection rights were violated by the finding of guilt; and the result constituted cruel and unusual punishment under the Eighth Amendment. (Id.) By Order entered October 13, 2006, the Superior Court denied the petition, finding "no error justifying the requested relief," citing, inter alia, Superintendent v. Hill, 472 U.S. 445 (1975). (Ans. Exh. 4.) Smith filed a habeas petition in the Court of Appeal on November 16, 2006, raising the same claims. (Ans. Exh. 5.) That court summarily denied the petition on November 30, 2006, without citation to authority. (Ans. Exh. 5; Pet. Exh. B.) Smith presented the same petition to the California Supreme Court on December 18, 2006. (Ans. Exh. 7.) That court summarily denied the petition on January 17, 2007, citing In re Dexter, 25 Cal. 3d 921 (1979).[1] (Pet. Exh. A.)

Smith filed his federal Petition on February 7, 2007. He presents three grounds for relief. First, he challenges the permanent loss of credits under CAL. CODE REGS. tit. 15, § 3327 as a due process violation because his cellmate admitted he brought the alcohol into the cell without Smith's knowledge, resulting in factually unsupported discipline. Second, he challenges as a due process violation, denial at the disciplinary hearing of his request to call three witnesses in addition to the four

---

[1] The applicability of the Dexter case to Smith's circumstances or claims is not readily apparent, as that case deals with sentencing and exhaustion issues.

witnesses he was permitted to call. Third, he claims he was treated differently from other similarly-situated prisoners charged with inmate-manufactured alcohol infractions "under the same circumstances, same facility" who were found not guilty. (Pet. pp. 5-6.) There is no dispute Smith exhausted his administrative remedies, and his Petition was timely filed.

## DISCUSSION

### I. Federal Habeas Review Standards

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Only errors of federal law can support federal intervention in state court proceedings, and only to correct such errors. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989). Federal habeas courts are bound by states' interpretations of their own laws, and a state court's factual findings are presumed correct. Himes v. Thompson, 336 F.3d 848, 852 (9th Cir. 2003); Estelle v. McGuire, 502 U.S. 62, 68 (1991).

Federal habeas petitions filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA establishes a "highly deferential standard for evaluating state-court rulings." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). A federal court cannot grant a state prisoner habeas relief unless it determines a claim adjudicated on the merits in state court proceedings "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Bell v. Cone, 535 U.S. 685, 694 (2002). The denial of a petition by the state's highest court "without comment or citation constitute[s] a decision on the merits of the federal claims," and "such claims [are] subject to review in federal habeas proceedings." Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992). When there is no reasoned decision from the state's highest court, the federal court "looks through" to the rationale of the underlying decision. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). A state court's adjudication on the merits "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the

evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). An evidentiary hearing is not required when the issues "can be resolved by reference to the state court record," as is the case here. Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998).

**II.   Due Process In Prison Disciplinary Context**

Disciplinary actions against inmates for institutional rules violations are governed by Title 15 of the California Code of Regulations, Article 5, Inmate Discipline, sections 3310, *et seq.* Discipline in the form of a loss of time credits can affect a prisoner's parole date. The loss of credits is permanent in certain circumstances including, as pertinent here, conviction of a disciplinary offense involving "fermentation or distillation of materials in a manner consistent with the production of alcohol in a prison." CAL. CODE REGS tit. 15, § 3327(a)(4)(C).

The Due Process Clause is implicated if a liberty interest attaches to the disciplinary deprivation. Imposing discipline that will inevitably affect the duration of a sentence gives rise to a protected liberty interest entitling the inmate to due process. See Sandin v. Conner, 515 U.S. 472, 484, 487 (1995). "In analyzing the procedural safeguards owed to an inmate under the Due Process Clause, we must look at two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir. 2003) (citing inter alia, McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002)). A liberty interest may not be infringed without due process. Wolff v. McDonnell, 418 U.S. 539 (1974) (due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits). Thus, inmates like Smith have a liberty interest in credits they have earned toward an earlier parole date, satisfying the first prong of the due process analysis. See Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986).

The second prong of the due process analysis addresses the procedural protections required before the state may deprive an inmate of a liberty interest. That prong is satisfied, as pertinent here, if the inmate receives: "(1) advance written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at

563-67). "[R]evocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." Id. (citation omitted). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the" board. Id. at 455-56 (emphasis added).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff 418 U.S. at 556. The Due Process Clause requires only that prisoners be afforded those procedures mandated by Wolff and its progeny, with no federally-cognizable claim for habeas relief that a prison failed to comply with its own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin, 515 U.S. 472. Determining whether the federal standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or reweighing of the evidence. On the contrary, the reviewing court is not authorized to perform those latter functions. See Toussaint, 801 F.2d at 1105. The dispositive question is whether there is any reliable evidence in the record that could support the decision. Id.

**III.  Habeas Relief Not Warranted**

  **A.  Some Evidence Supports The Discipline**

Respondent argues Smith cannot show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, nor that the decision was based on an unreasonable determination of the facts from the evidence presented. Contrary to Smith's claims, Respondent contends the guilty finding on the RVR was supported by some evidence, no federal right was violated when Smith was denied three witnesses in addition to the four he was permitted to present, and the guilty finding does not violate his equal protection rights. (Ans. 3:17-28.)

The record of Smith's April 14, 2006 RVR (CDC-115) hearing is provided as Petitioner's Exhibit D and Answer Exhibit 2. The Senior Hearing Officer ("SHO") explained the purpose of the hearing and Smith's rights. Smith had received a written copy of the RVR within the 15 days from date of hearing required by regulation, and all other timing and notice requirements were met. He pled not guilty to the charges read to him. His written statement was incorporated into the record:

//

> At the disciplinary hearing on RVR, Log # 05-FC-01-024, January 14, 2005 CCR 3016(a) Possession of Manufactured Alcohol, I pled not guilty for the following reasons:
>
> (1) I had no prior knowledge of any alcohol.
>
> (2) Inmate SHANNON, D-64480 purchased the alcohol while I was in the dining hall.
>
> (3) **There is no evidence that I had any knowledge [of] any alcohol**.
>
> (4) I am submitting documentary evidence in my defense pursuant to CCR, 3320(L) where other inmates here on C-Faci[l]ity was given the same RVR, and when their cellmate took responsibility the charges were dismissed. CCR, 3004(a) inmates have the right to be treated fairly. CCR, 3004(c) inmates shall not be subjected to any form of discrimination.
>
> (5) Over the (30) years incarcerated I never been associated with alcohol until now.
>
> (6) Second level of appeal dismissed my appeal stating that "I should have removed the alcohol or reported it to staff for disposal.["] If I would have knowledge of alcohol in the cell that I was sharing with inmate SHANNON and if I would have removed or reported what belong to him it could have put my life in danger or cause some form of violence behavior. CCR, 3005(a) inmates shall refrain from behavior which might lead to violence or disorder. CCR, 3291(a) Employees shall be responsible to enforce regulations and procedures not inmates.
>
> I ask that the aforementioned reasons and in the interest of fairness that the charges be dismissed. Refer to submitted RVR's where charges were dismissed on other inmates for the same offense.

(Pet. Exh. D, p. 2; Ans. Exh. 2, p. 2.) (emphasis added)

The SHO accepted as documentary evidence from Smith four RVRs associated with other disciplinary proceedings purportedly involving similarly-situated inmates.[2] Smith also asked for and was granted permission to have his cellmate appear at the hearing. Inmate Shannon's sworn statement

---

[2] Smith attaches the two RVRs memorializing those charges and results as Petition Exhibit F (an RVR for another inmate also named Smith) and Exhibit G (an RVR for an inmate named Torrez-Gomez). The hearing record indicates he presented those and two others, including one for his cellmate at the time, inmate Shannon. The Exhibit documents reflect each of those inmates had been in a cell where inmate-manufactured alcohol was discovered when officers smelled a strong odor and investigated. Each had pled not guilty and each was found not guilty. However, neither the details of the evidence in those cases nor the considerations the hearing officer may have relied on in reaching the results are recorded on the Exhibits. Testifying witnesses at his own hearing had already established Smith's point that sometimes hearing officers accept as adequate to exonerate charged inmates evidence from their cellmates claiming responsibility for contraband.

was incorporated into the record:

> In reference to Rules Violation Report, CCR # 3016(a) Possession of Manufactured Alcohol dated: 01-14-05. On 1-14-05, upon returning from the evening meal, I purchased some alcohol from down the tier without inmate Smith's B-69623 knowledge and placed it beneath the lower bunk inside my bucket with my personal clothes. I was assigned the lower bunk area where the alcohol was located. . . .

(Pet. Exh. D, p. 3; Ans. Exh. 2, p. 3.)

Shannon confirmed in his testimony he purchased the manufactured alcohol in the manner described in his written statement, he concealed it beneath his own bed, and everything beneath that bed belonged to him. He answered "yes" to Smith's question: "If inmate SMITH had known you placed the alcohol beneath the bed and without your agreement reported the alcohol to staff for disposal, could that had lead [*sic*] to a problem between you and SMITH?" (Pet. Exh. D, p. 3; Ans. Exh. 2, p. 3.) The SHO also permitted Smith to call and question three other witnesses: Inmate Clark, Inmate Durst, and Inmate Adams. Clark and Durst each testified they had cellmates who took responsibility for alcohol discovered in their cells, and they thereby avoided any associated personal discipline. (Id.) Inmate Adams testified he and his cellmate Durst were charged with the alcohol violation, but charges against Durst were dismissed when Adams pled guilty to the manufacture. (Id.)

Smith's request for two additional inmate witnesses was denied on grounds the proposed questions would be "irrelevant" due to the similarity or duplication of subject matter already in the record through his other witnesses, and because of inability to locate one of them. (Pet. Exh. D, p. 4; Ans. Exh. 2, p. 4.) Smith also requested Correctional Officer D. Kent be summoned to testify as a percipient witness to the alcohol discovery giving rise to the RVR.[3] The SHO denied that request after he reviewed Smith's proposed questions and found them "irrelevant" because "the information gained from the witness would not add any new or additional evidence to this hearing." (Id.)

//
//

---

[3] Smith engages in pure speculation that Office Kent's version of the incident would have differed in any respect from the reporting officer's representations. Smith contends Officer Kent "could" have "testified if he had smelled the allege[d] alcohol being that he was present during the discovery of the alcohol." (Traverse 2:3-8, citing Pet. Exh. 2, p. 4.)

The SHO found Smith guilty of violating CAL. CODE REGS. tit. 15, § 3016(a), possession of inmate manufactured alcohol, by a preponderance of substantiating evidence. (Pet. Exh. D, p. 4; Ans. Exh. 2, p. 4.) The RVR described the alcohol smell, the investigative search, and the discovery of the contraband. The SHO explained he based his findings "on the Reporting Employee's written report, which states in part: ". . . I smelled a strong odor coming from behind the cell door #147 . . . This SHO believes that if the Reporting Employee was able to smell the alcohol from outside the cell, the defendant could smell it from inside the cell." (Pet. Exh. D, p. 4; Ans. Exh. 2, p. 4.) On that basis, knowledge of the alcohol's presence in the cell may be reasonably imputed to Smith, supporting the SHO's finding "the defendant's testimony of having no knowledge of the alcohol not to be credible." (Id.) Federal habeas courts reviewing state actions do not disturb credibility determinations. Toussaint, 801 F.2d at 1105. The undisputed presence of the alcohol in Smith's cell and the circumstances of its discovery provide the requisite "some evidence" for the SHO's rejection of Smith's ignorance defense Hill, 472 U.S. at 455, and that factual determination is objectively reasonable.

### B. Smith Received All Process He Was Due

Smith claims the denial of three requested witnesses violated the department of corrections regulations "so as to deny petitioner his due process rights." To the extent the claim challenges the conduct of the proceedings as regulated by California law (such as his complaint one of the rejected witnesses should have been made available via telephone as permitted under CDC rules), state law issues are not cognizable on federal habeas review. Estelle, 502 U.S. at 68; Oxborrow, 877 F.2d at 1401. A violation of prison regulations in the context of a disciplinary proceeding does not violate the Due Process Clause as long as the minimum protections outlined in Wolff are provided, as they were here. See Wolff, 418 U.S. at 556; Walker, 14 F.3d at 1419-20.

"[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. Permissible reasons for a prison committee to refuse to call a particular witness include "irrelevance, lack of necessity, or the hazards presented in individual cases." See id. Prison officials have the "discretion to keep the hearing within

reasonable limits." Ponte v. Real, 471 U.S. 491, 496 (1985) (quoting Wolff, 418 U.S. at 566). They need only explain "in a limited manner" their reasons for restricting the inmates' evidentiary presentation. Id. at 497. Smith was permitted to call four witnesses, with the three others he proposed expressly deemed cumulative or unavailable.

Smith had notice of the hearing, an opportunity to be heard and to present evidence, and was informed of the basis for the discipline result. The Court finds no basis for application here of Smith's general premise "the CDC's interpretation of its regulation is 'clearly arbitrary or capricious or has no respons[i]ble basis [so that] courts should not hesitate to reject it.'" (Traverse 4:13-17, citing In re Carter, 199 Cal. App. 3d 271, 277 (1988)).[4] The state courts reasonably rejected his claim the absence of the additional witnesses deprived him of due process.

### C. No Equal Protection Violation Occurred

With respect to Smith's claim he was treated differently from other prisoners who were charged with inmate alcohol infractions, but were found not guilty when their cellmates claimed responsibility for the contraband, he relies on the Fourteenth Amendment principle "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Smith received the same disciplinary process prescribed for all inmates accused at RVR hearings, with all associated procedural safeguards. His alleged unequal treatment compared to other prisoners accused of violating the prohibition against possession of inmate-manufactured alcohol exonerated when their cellmates took responsibility for the misconduct does not compel a finding a constitutional violation occurred in Smith's case. See Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (while the Equal Protection Clause ensures similarly situated persons are treated alike, it does not mandate an absolute equality of results). Each rules infraction incident with its associated evidence is highly fact-specific, precluding a purely result-oriented equation. The details of the comparative cases Smith offered and any reasoning associated with those results are either not presented or are not compelling.

//

---

[4] The Carter case is distinguishable from Smith's case in that it did not involve disciplinary forfeiture of earned credits. Rather, habeas relief was affirmed on grounds the inmate was entitled to worktime credits he could have earned but was prevented from earning by administrative delay in preparing his work pass.

# CONCLUSION

For all the foregoing reasons, the Court finds the state court results upholding Smith's disciplinary hearing process and result were not contrary to nor an unreasonable application of clearly established United States Supreme Court authority, nor did they involve an unreasonable determination of the facts. Therefore, this Court need not reach the issue of remedy.[5] Accordingly, Smith's Petition for federal habeas relief is **DENIED**, judgment shall be entered accordingly, and this matter is terminated in its entirety.

**IT IS SO ORDERED**.

DATED: April 28, 2009

_____
Hon. Roger T. Benitez
United States District Judge

---

[5] Smith sought to have the January 2005 Rules Violation Report vacated and removed from his central file. (Traverse 5:6-9.) Respondent contended even if the Court concludes the disciplinary decision denied Smith federal rights, the appropriate remedy would be to order Respondent to hold a new disciplinary hearing in compliance with his rights. (Ans. 4:19-21.)